UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  12-60312-CR-COHN/SELTZER

UNITED STATES OF AMERICA,

                Plaintiff,

    vs.

GENET REMBERT, et al.,

                Defendant.

_____/

**DEFENDANT REMBERT'S MOTION FOR DOWNWARD
DEPARTURE AND/OR *BOOKER* VARIANCE**

The defendant, Genet Rembert, through counsel, files her motion for a downward departure

from the advisory guideline range pursuant to U.S.S.G. § 5K2.12, Coercion and Duress and/or a

downward variance pursuant to 18 U.S.C. § 3553 and *United States v. Booker*, 543 U.S. 220, 125

S.Ct. 738 (2005), and in support thereof, Ms. Rembert states:

**Background**

On May 29, 2013, Ms. Rembert and co-defendant/pimp/husband MacKenley Desir were

found guilty of count one of a second superseding indictment which charged conspiracy to commit

sex trafficking by force, threats of force, fraud or coercion, in violation of 18 U.S.C. § 1594(c).  The

indictment alleged that the conspiracy spanned from approximately June 11, 2012 to approximately

July 1, 2012.

Ms. Rembert was acquitted of count three of the indictment which charged a substantive

crime of causing a person, that is C.J., to engage in a commercial sex act, by means of force, threats

of force, fraud or coercion, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1) and 2. The indictment alleged that the substantive account spanned the same time period alleged in the conspiracy count.

Mr. Desir was convicted of count three and as well as count two which charged that he caused a person, B.V., to engage in a commercial sex by means of force, threats of force, fraud or coercion, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1) and 2. Ms. Rembert was not charged in count two of the superseding indictment.

During the trial of the case, C.J. testified that she traveled to Florida from Vermont in April 2012 to enter into a drug recovery program. She was dismissed from the program because she began using drugs again. C.J. testified that she used crack cocaine and heroin.

After she was dismissed from the program, C.J. testified that she moved in with a drug dealer and continued to use drugs. While trying to obtain drugs, she met co-defendant Desir who transported her to a motel in Hollywood, Florida. C.J. testified that Desir supplied her with drugs, and they engaged in consensual sex, and within 48 hours of their meeting, she agreed to work for Desir as a prostitute. C.J. further testified that Ms. Rembert was Desir's assistant in the business. The government described Ms. Rembert as Desir's bottom girl.[1]

During the time frame alleged in the indictment, C.J. testified that she was arrested twice. However, she did not advise the arresting officers that she was being forced to prostitute herself. Both times, she was bonded out of jail by Desir. C.J. also testified that she was beaten by Ms. Rembert after she had stolen drugs from Desir.

---

[1]*See United States v. Brooks*, 610 F.3d 1186, 1196 (9th Cir. 2010)(recognizing relevance of government expert testimony concerning the role of the bottom girl as the pimp's most senior prostitute, who often trains new prostitutes)

C.J. was eventually able to contact her family Vermont. Her father traveled to Hollywood and with the assistance of the police, was able to locate her. When Mr. Desir realized that C.J.'s father was looking for her, he surrendered C.J. to the bondsman. Shortly thereafter, C.J. was released from jail to her father.

C.J. and Ms. Rembert are approximately the same age.[2]  During the time period alleged in the indictment, Ms. Rembert was twenty years of age.

Ms. Rembert was born to unmarried parents and she has never met her father. Ms. Rembert's mother married Patrick Brantley when Ms. Rembert was still an infant. However, they separated and Ms. Rembert has not had any contact with Mr. Brantley since she was five or six years old. PSIR ¶ 89.

Ms. Rembert's mother physically abused her.  Ms. Rembert recalls being slapped, strangled and put in a closet, and physically abused every time she did something wrong. When she was twelve or thirteen years old, her mother threw her on the carpet and she suffered a severe rug burn which required a liquid stitch. PSIR ¶ 95.  Ms. Rembert has not seen her mother since 2010 and has no real relationship with her. PSIR ¶ 89.

When Ms. Rembert was approximately six years old she was sent to live with relatives in Alabama because of her mother. While living in Alabama, she was physically abused by her aunt and sexually abused by a cousin. PSIR ¶¶ 96-97. Ms. Rembert's reports that her aunt would make her go into a dog house, take ice cold baths, make her slap herself and call herself ugly. Her cousin inserted his fingers, pens, butter knife handles, and other objects into her vagina. PSIR ¶ 97

_____

[2]Police Reports from C.J.'s arrests indicate that C.J. was twenty years old in June of 2012.

When Ms. Rembert was approximately nine years old, the Florida Department of Children and Families obtained custody of Ms. Rembert.[3] The petition for dependency alleged that Ms. Rembert witnessed her mother being beaten up by her paramour; was missing school to take care of her mother; was living in dirty home without electricity, furniture or ample food.  There were also allegations that the mother could not protect Ms. Rembert from the sexual advances of her paramour.

While in the custody of the Department of Children and Families, Ms. Rembert was placed in five different foster homes. PSIR ¶ 91.  Eventually, she was placed with her maternal grandfather, William Rembert, with whom she resided from the approximate ages of ten to fourteen.

Her grandfather would proffer that those years were anything but uneventful. According to her grandfather, Ms. Rembert had many disciplinary problems at school including fighting and engaging sexual acts on campus.  Her grandfather placed Ms. Rembert in schools for children with emotional handicaps. However, Ms. Rembert eventually ran away from her grandfather's home around the age of 14.

A review of Ms. Rembert's State of Florida Dependency case file, Broward County Juvenile Division Case No: 2001-2564-CJ-DP, reveals that Ms. Rembert has a significant history of mental illness.

In a Comprehensive Behavioral Health Assessment dated 04-06-01 by Kids in Distress it was reported that Ms. Rembert was diagnosed with Dysthymic Disorder (a severe form of depression) and R/O Adjustment Disorder.  Age 9.

---

[3]The undersigned is in possession of Ms. Rembert's Broward County Circuit Court Dependency file and documents from the file to will be available at the sentencing hearing for review by the Court or the government.

In a Comprehensive Behavioral Health Assessment dated 07-05-07 by Smith Community Mental Health Center Ms. Rembert was diagnosed with Bipolar Disorder.  Age 15

In an Individualized Mental Health/Substance Abuse Treatment Plan/Review and Progress Summary dated 06-08-08 it was reported that Ms. Rembert was diagnosed with Bipolar I Disorder, Posttraumatic Stress Disorder, R/O Reactive Attachment Disorder, Conduct Disorder, Cannabis Abuse, and Attention Deficit Disorder. Age 16

In a Suitability Assessment dated 07-27-09 by Dr. Charles Winick, Ms. Rembert was diagnosed with Bipolar Disorder NOS, Attention Deficit Hyperactivity Disorder, Combined Type, and Conduct Disorder. Age 17.

In addition, Ms. Rembert reports that she has attempted suicide multiple times PSIR ¶ 112.

Ms. Rembert was recently evaluated by Michael P. Brannon, Psy.D.  Dr. Brannon confirmed Ms. Rembert's bipolar disorder diagnoses, and noted that Ms. Rembert reported numerous symptoms of a major mental disorder.  Dr. Brannon further concluded that psychological testing and prior treatment records corroborated her self-reported symptoms and the tests did not reveal any indications of malingering. Dr. Brannon's report is attached hereto as Defense Exhibit 1.

During her interview with Dr. Brannon, Ms. Rembert reported that she had worked as a prostitute since the 13 years of age and was doing sexual acts for things she wanted since she was 10 years of age.  She further reported that she had a lot of pimps and most of them beat her up trying to break her down.  She reported that she was sexually assaulted and beaten up on numerous occasions by customers while working as a prostitute.

Ms. Rembert was often beaten up and verbally abused by her codefendant/pimp/husband, Mr. Desir. Ms. Rembert reports that the abuse began early in their relationship and continued until arrest

for the instant offense. PSIR ¶ 100. Mr. Desir slapped her daily when he decided he did not like something she did. He often kicked her in the stomach and bit her. Ms. Rembert reported multiple hospitalizations to treat swollen bite marks and abdominal pain. On one occasion Mr. Desir split her shins when he dropped a weight on her legs. He broke her right arm, he kicked her head into the floor and cause cranial bleeding, he choked her out, and he hit her with an iron. The defendant advised she has scars on her head where Mr. Desir hit her with his rings, and he has given her black eyes. Mr. Desir also regularly called Ms. Rembert names. PSIR ¶ 104

Ms. Rembert's report of physical abuse at the hands of Mr. Desir is corroborated by hospital records. Attached hereto as Defense Exhibit 2 are medical records from Memorial Regional Hospital dated May 3, 2012, wherein Ms. Rembert complains that her boyfriend hit her in the stomach. Defense Exhibit 3 is a medical record from Broward Medical Center dated May 16, 2012 wherein a nurse reports that Ms. Rembert stated she was choked by her boyfriend until she passed out. The nurse further observed bruising and bite marks all over Ms. Rembert's body.  Defense Exhibit 4 is medical records from Memorial Regional Hospital indicating that Ms. Rembert arrived there on November 7, 2012 complaining of abdominal pain.

Ms. Rembert's report of verbal abuse and phone calls are corroborated by phone conversations between Mr. Desir and Ms. Rembert that were recorded by the government while Mr. Desir was incarcerated at the Krome Detention Center. These phone calls occurred prior to Ms. Rembert's arrest. In these calls, Mr. Desir tells Ms. Rembert to shut up while he's talking and uses a string of profanities when ordering her to complete tasks. He calls her stupid and slow, and repeatedly refers to her as bitch, dumb hoe, and other profane names. In one of the calls, Ms. Rembert tells Mr. Desir that she had a tattoo of his name on her chest that spanned the length of her

collar bone.  Mr. Desir brought Ms. Rembert to tears by telling her the tattoo was too big and he

wanted hearts and flowers around his name.

Finally, even though Ms. Rembert was married to Mr. Desir and his purported bottom girl,

she was still expected to earn money for him as a prostitute.[4] They were married on June 8, 2011.

*See* PSIR ¶ 100. However, Ms. Rembert was arrested for prostitution on March 6, 2012, April 27,

2012, and November 19, 2012

Based upon the above set of facts, Ms. Rembert would respectfully request that the Court

depart downward from the advisory guideline range of life imprisonment.

**ARGUMENT AND MEMORANDUM OF LAW**

A.      ***Booker* Variance**

In *United States v. Booker,* 543 U.S. 220,259 125 S.Ct. 738, 764, (2005), the United States

Supreme Court rendered the Federal Sentencing Guidelines advisory by excising statutory provisions

which required Courts to impose a sentence within the applicable Guideline range. As a result, a

sentencing court must still "consider Guidelines ranges," but it may "tailor the sentence in light of

other statutory concerns as well."  *Id*. at 245-46, 125 S.Ct. at 757 (citing 18 U.S.C. § 3553(a))

After *Booker*, the overarching provision of 18 U.S.C. § 3553 instructs sentencing courts to

"impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing,

including "to reflect the seriousness of the offense," "to promote respect for the law," "to provide

just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect

---

[4]Mr. Desir is a native of Haiti with a prior criminal record. The undersigned strongly suspects that Mr. Desir married Ms. Rembert because he believe the marriage would assist him with adjusting his immigration status.

the public from further crimes of the defendant." *See Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007).

The statute further provides that, in determining the appropriate sentence, the court should consider a number of factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the sentencing range established" by the Guidelines, "any pertinent policy statement" issued by the Sentencing Commission pursuant to its statutory authority, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.*

Upon considering the nature and circumstances of the offense, and Ms. Rembert's personal history and characteristics, this Court should impose a sentence below the advisory guideline.

While Ms. Rembert was not a minor participant in the conspiracy offense for which she was convicted, she was significantly less culpable than Mr. Desir's. Based upon their respective culpability, Ms. Rembert's sentence should be significantly less than the sentence that Desir receives. Indeed, in a practical sense, Ms. Rembert was also one Mr. Desir's victims.

Federal Courts have permitted expert testimony explaining the pimp-prostitute relationship. In *United States v. Anderson*, 851 F.2d 384, 392 (D.C. Cir. 1988), the Court held that the expert testimony of Dr. Lois Lee on the modus operandi of pimps and on the nature of the relationship between pimps and prostitutes was admissible. In the *Anderson* case, the defendant was charged with interstate transportation of females for prostitution. Dr. Lee was a government witness and specifically testified:

- that the women a pimp recruits are usually vulnerable, young and often runaways who have been abused or neglected by their families;

- that the typical pimp will encourage his prostitutes to compete for his affection by earning money, and will beat his prostitutes if they fail to adhere to his rules; and

- that prostitutes are often so financially and psychologically dependent on their pimps that they are unable to leave even when they are beaten

*Anderson*, *Id*; *see also United States v. Taylor*, 239 F.3d 994(9th Cir. 2001)(approving admissibility of similar expert testimony by Dr. Lee); *see generally* Note, "Men Who Own Women: A Thirteenth Amendment Critique of Forced Prostitution," 103 Yale L.J. 791, 793–96 (1993) (citing research on the abuse of prostitutes by pimps and noting that the full extent of such abuse remains unknown).

The prevalence of psychological and physical abuse of women is well-documented. The cycle of victimization and dependence that develops in systematically abused women is now an established psychological phenomenon. *See generally* Lenore E. Walker, The Battered Woman Syndrome (1984). Ms. Rembert would submit that the pimp-prostitute relationship is a sub-set of the battered woman syndrome.

Ms. Rembert was 18 years old when she first began her relationship with Mr. Desir. As noted above Ms. Rembert had a very difficult childhood marred by physical and sexual abuse, as well as an significant history of mental illness. Mr. Desir beat her and verbally abused her. There is more than sufficient material in the record for the Court to conclude that Ms. Rembert was psychologically dependent upon Mr. Desir.

A sentence of life imprisonment is entirely inappropriate for Ms. Rembert and if imposed would put her in the same category as defendants that commit murders during drug trafficking crimes or crimes of violence; pedophiles; defendants that prostitute children; and the defendants who commit the most heinous child pornography offenses. Ms. Rembert would receive the same sentence

as Sheik Abdul Rhaman and Ramsey Yousef (the world trade center bombers), John Gotti, Theodore

Kuczinski (the "unabomber"), Eric Rudolph (the abortion clinic bomber), Zacarias Moussaoui (911

terrorist attack conspirator) and others similarly situated.  A life sentence would be a "grossly

disproportionate" sentence which would violate the protection against "cruel and unusual

punishment" as guaranteed by the Eighth Amendment to the United States Constitution. *Lockyear*

*v. Andrade,* 538 U.S. 63, 72 (2003); *Ewing v. California,* 538 U.S. 11, 21(2003)(plurality

opinion)(citing *Harmelin v. Michigan,* 501 U.S. 957, 996-97 (1991).

> **B.     Downward Departure pursuant to U.S.S.G. § 5K2.12**
> **Imperfect Coercion and Duress**

Under U.S.S.G. § 5K2.12, a sentencing court may downwardly depart if the defendant

committed the offense because of serious, coercion, blackmail, or duress under circumstances not

amounting to a complete defense. When the instant offense was committed, Ms. Rembert was

psychologically controlled by Mr. Desir.  The extent of the psychological control that Ms. Rembert

is evidenced by the recorded phone conversations provided by the government.

During those phone calls, although Mr. Desir was in custody and Ms. Rembert had yet to be

arrested, Mr. Desir ordered Ms. Rembert about as if she was a servant, and he did so in the most

crass and profane tone of voice.  Nevertheless, Ms. Rembert appeared to willingly comply with his

wishes. Undoubtedly, the beatings and physical abuse that she suffered at the hands of Mr. Desir

played a significant part in her willingness to assist him in prostituting C.J.

A downward departure from the Guideline range is warranted when a woman's status as a

victim of systematic physical and emotional abuse substantially lessens her blameworthiness,

notwithstanding her legal guilt. *United States v. Gavira* 804 F.Supp. 476, 480 (E.D.N.Y. 1992). Such

a departure may be based upon the authority of Guideline § 5K2.12 or independently upon Congress's directives in 18 U.S.C. § 3553 or upon both. *Id.*  Accordingly, Ms. Rembert would respectfully requests that the Court downwardly depart from the advisory guideline range pursuant to U.S.S.G. § 5K2.12.

## CONCLUSION

Based upon the foregoing facts, arguments and authorities, the defendant, Genet Rembert, respectfully requests that the Court grant her motion for downward departure pursuant to U.S.S.G. § 5K2.12, Coercion and Duress and/or her motion for downward variance pursuant to 18 U.S.C. § 3553 and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005), and impose a sentence of 15 years.

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

By:     s/ *Daryl E. Wilcox*
Daryl E. Wilcox
Assistant Federal Public Defender
Florida Bar No. 838845
One E. Broward Boulevard, Suite 1100
Fort Lauderdale, FL 33301-1842
(954) 356-7436
(954) 356-7556, Fax
Daryl_Wilcox@FD.Org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on September 27, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


By:     *s/Daryl E. Wilcox*
                Daryl E. Wilcox


J:\Rembert, Genet Reg 01321-104\Pleadings\Booker Variance.wpd

**SERVICE LIST**
**UNITED STATES v. GENET REMBERT, et al.**
**CASE NO.  12-60312-CR-COHN/SELTZER**
**United States District Court, Southern District of Florida**


Francis Ines Viamontes, Esq.
francis.viamontes@usdoj.gov
Assistant United States Attorney
500 E. Broward Boulevard, 7th Floor
Fort Lauderdale, FL 33394-3016
954-356-7255
954-356-7336, fax
Attorney for the Government
Notices of Electronic Filing


Mark Dispoto, Esq.
mark.dispoto@usdoj.gov
Assistant United States Attorney
500 E. Broward Boulevard, 7th Floor
Fort Lauderdale, FL 33394-3016
954-356-7255
954-356-7336, fax
Attorney for the Government


Deric Zacca, Esq.
dericzacca@dczlaw.com
Monarch Professional Centre
12781 Miramar Parkway, Suite 303
Miramar, FL 33024-4204
954-450-4848
954-450-4204, fax
Attorney for Mackenley Desir
Notices of Electronic Filing


Daryl E. Wilcox, Esq.
daryl_wilcox@fd.org
Assistant Federal Public Defender
One E. Broward Boulevard, Suite 1100
Fort Lauderdale, FL 33301-1842
954-356-7436
954-356-7556, fax
Attorney for Genet Rembert
Notices of Electronic Filing


Vanessa S. Johannes, Esq.
vanessa.s.johannes@usdoj.gov
Assistant United States Attorney
99 NE 4th Street
Miami, FL 33132-2111
305-961-9023
305-530-7976, fax
Attorney for the Government


Shannon Culberson
United States Probation Officer
299 E. Broward Boulevard, Suite 409
Fort Lauderdale, FL 33301-1865
954-769-5543
954-769-5566, fax
Probation Officer for Genet Rembert
Notices Sent Via Interagency Mail